# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE STATE OF OKLAHOMA, by and through THE OKLAHOMA DEPARTMENT OF REHABILITATION SERVICES § § § § | | |
| Plaintiff § | | |
| v. § | **Case No.:** CIV-18-1197-SLP | |
| THE UNITED STATES OF AMERICA, by and through the HONORABLE JAMES MATTIS, Secretary of Defense; and the HONORABLE MARK ESPER, Secretary of the Army § § § § § § | | |
| Defendants. § | | |

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

**NOW COMES**, Plaintiff, the STATE OF OKLAHOMA, and files this *Complaint for Temporary Restraining Order and Injunctive Relief* seeking to enjoin Defendants, THE UNITED STATES OF AMERICA, from proceeding with any actions under Solicitation No.: W9124J-18-R-0024 for full food service at Ft. Sill, Lawton, Oklahoma, until such time as the arbitration proceeding initiated by the STATE OF OKLAHOMA pursuant to the Randolph-Sheppard Act, 20 U.S.C. § 107 *et seq*. (the "Act" or "RSA") is concluded.

Bids for the Solicitation are due on December 19, 2018. The parties have conferred and counsel for both parties are available for a hearing on a temporary restraining order on Wednesday, December 12, 2018 and Friday, December 14, 2018. The response to the

Solicitation is extremely long and complicated, and thus Oklahoma is requesting the hearing be held this week in case Oklahoma needs to comply with the current submission date of December 19, 2018. Counsel for Oklahoma is from out of state and requests at least 24 hours' notice of the hearing.

In support of this Complaint, Plaintiff respectfully requests the following:

## I.
## PARTIES

1. Plaintiff, the STATE OF OKLAHOMA, by and through the Oklahoma Department of Rehabilitation Services ("Oklahoma" and/or "ODRS"), is an Oklahoma state agency and the State licensing agency ("SLA") under the Randolph-Sheppard Act, 20 U.S.C. §§ 107 *et seq.* (the "Act") and its implementing regulations.

2. Defendant, the UNITED STATES OF AMERICA, is acting by and through the Honorable James Mattis, Secretary of Defense, the Honorable Mark Esper, Secretary of the Army. Secretaries Mattis and Esper, are acting by and through, Mr. Gary L. Stevens, the Contracting Officer assigned to this procurement. Secretaries Mattis and Esper may be served by service of a copy of the summons and the instant Complaint upon the United States Attorney General at Washington, District of Columbia via certified mail and delivering same to the United States Attorney for the Western District of Oklahoma.

## II.
## JURISDICTION

3. As recently affirmed by the Tenth Circuit, jurisdiction is proper in this Court under 28 U.S.C. §§ 1346, 1331 (arising from the Randolph-Sheppard Vending

Facility Act, 20 U.S.C. §§ 107 *et seq.*) and 5 U.S.C. §§ 701 *et seq.* (judicial review of federal agency action). *See Kansas v. SourceAmerica*, 874 F.3d 1226, 1251 (10th Cir. 2017).

4. Although Oklahoma has initiated an arbitration proceeding against Defendant pursuant to the Act, this arbitration does not act as a bar to this Court's jurisdiction over the issues presented in this Complaint. *See Kentucky v. United States, ex rel. Hagel*, 759 F.3d 588, 597-599 (6th Cir. 2014)(finding that completing arbitration under the RSA is not a jurisdictional prerequisite). Additionally, failure to complete the arbitration before the filing of this Complaint is not a jurisdictional prerequisite either. *Id.* at 599-600.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to this action occurred in the Western District of Oklahoma. Specifically, the contract sought to be awarded will be performed at Ft. Sill, Lawton, Oklahoma.

### III.
### NATURE OF THE CASE

6. The Randolph-Sheppard Vending Facility Act, 20 U.S.C. §§ 107 *et seq.* ("RSA") was passed by Congress to provide blind persons with gainful employment and to enlarge their economic opportunities. *See* 20 U.S.C. §§ 107(a)(describing the RSA's purpose and authorization). Pursuant to Act, federal agencies have an affirmative obligation to establish vending facilities for blind licensees on all federal property to the

extent the facilities would not adversely affect the interests of the United States. *Id.* at § 107(b).

7. In furtherance of these objectives, Congress mandated that priority be given to the appropriate State licensing agency and its licensed blind vendor on all contracts for cafeteria operation services on Federal property, including full food services at Ft. Sill. *See* 20 U.S.C. §§ 107(b). ODRS is the State licensing agency for Oklahoma under the Act and Mr. David Altstatt Sr. is the licensed blind vendor chosen by ODRS. ODRS and Altstatt operate the current full food services contract at Ft. Sill. This current contract has a performance period of a base year plus four option years, for a total of five years. ODRS and Altstatt are currently performing in what the government describes as the second option year of the contract.

8. On February 28, 2018, Defendants notified ODRS that it was terminating the current Ft. Sill contract for the convenience of Defendants. However, pursuant to the Act this elimination of a Randolph-Sheppard facility can only be accomplished with the approval of the Secretary of Education, and Defendants neither requested nor received such approval.

9. The Act provides that if ODRS determines that Defendants are failing to comply with the provisions of the Act, ODRS may file a complaint for arbitration with the Secretary of Education. By letter dated April 19, 2018, ODRS initiated its complaint for arbitration challenging the Defendants' decision to terminate the Randolph-Sheppard contract at Ft. Sill despite ODRS having two unexpired 1-year options remaining on the contract.

10. On August 31, 2018 Defendants issued Solicitation No. W9124J-18-R-0024 (the "Solicitation") to replace the existing full food services contract at Ft. Sill.

11. A review of the Solicitation for this new contract reveals that several of its terms and conditions also violate the clear mandate of the Randolph-Sheppard Act and its implementing regulations. As such, proceeding with this procurement at this point will also be in violation of the RSA and result in an improper award.

12. By letter dated November 29, 2018, ODRS amended its arbitration demand to add the Solicitation defects to its arbitration request.

13. With this Complaint, Oklahoma seeks to enjoin Defendants from proceeding with the follow-on procurement until the arbitration proceeding is concluded.

## IV.
## FACTUAL AND PROCEDURAL BACKGROUND

**A.** **Randolph-Sheppard Act.**

14. The Randolph-Sheppard Vending Facility Act, 20 U.S.C. §§ 107 *et seq.* was passed by Congress to provide blind persons with gainful employment and to enlarge their economic opportunities. The Secretary of the United States Department of Education is the federal agency charged with implementing the RSA and ensuring that all executive agencies comply with same. *See* 20 U.S.C. § 107a(a).

15. Pursuant to the RSA, federal agencies have an affirmative obligation to establish vending facilities for blind licensees on all federal property, such as the military dining facilities on Ft. Sill, to the extent the Randolph-Sheppard facilities would not adversely affect the interests of the United States. *See* 20 U.S.C. § 107(b).

16. Under the Act, each state has a State licensing agency appointed to establish vending facility programs for the blind, including training and licensing qualified vendors to manage cafeteria operation services on Federal property. 20 U.S.C. § 107a(b).

17. The Act allows Defendants to directly negotiate with ODRS for dining facilities contracts without competitive procurement. If direct negotiations are not conducted, then the Act requires Defendants to conduct a solicitation pursuant to the competitive provisions of the Act to determine if the operations can be provided at a reasonable cost with food of a high quality when compared to that currently provided. *See* 34 C.F.R. §§ 395.33(a); (d).

18. If the SLA provides a proposal judged to be within a competitive range, then the executive agency must award the contract to the SLA. See 34 C.F.R. §§ 395.33(b); *see also* Army Regulation 210-25. This is the process by which ODRS secured the current contact on Ft. Sill.

19. Alternatively, if the SLA's proposal is determined to be outside the competitive range, the Secretary of Education must still be consulted to determine whether the contract priority right should be afforded the SLA anyway. *See* 34 C.F.R. § 395.33(a). In the end, it is the Secretary of Education who ultimately determines whether the Act's contract priority right should be afforded to the SLA, not the procuring agency.

**B.     Solicitations.**

20.     On June 6, 2018, Defendants issued a procurement for full food services at Ft. Sill under Solicitation No. W9124J-18-R-0011 ("RFP#1"). RFP#1 set July 16, 2018, at 3:30 pm (local time) as the date for receipt of proposals by offerors. RFP#1 was eventually cancelled by the government because of various defects identified by Oklahoma.

21.     On August 31, 2018, Defendants issued a second procurement for full food services at Ft. Sill under Solicitation No. W9124J-18-R-0024 for the procurement The Solicitation set September 21, 2018, at 4:00 pm (local time) as the initial date for receipt of proposals.

22.     On December 3, 2018, Defendants issued Amendment 0010 to the Solicitation. This amendment extended the bid submission date from December 7, 2018 at 12:00 p.m., to December 19, 2018, at 12:00 p.m. This amendment modified the language associated with the implementation of the Act, however, it did not correct the issue of unilateral termination of a Randolph-Sheppard contract. Furthermore, Amendment 0010 includes several additional Solicitation defects which contravene the mandates and statutory requirements of the Randolph-Sheppard Act:

    a.     It allowed Defendants unilateral discretion to limit the placement of ODRS in the new contract without seeking approval of the Secretary of Education;

    b.     It set an arbitrarily and unreasonable price ceiling and;

    c.     It required bidders to be prepared to provide services for which they would not be paid.

C. **Arbitration Demands.**

23. By letter dated April 19, 2018, ODRS initiated the required arbitration by filing a request for arbitration with the United States Department of Education, Rehabilitation Services Administration. This initial arbitration demand challenged Defendants' decision to re-procure the full food services at Ft. Sill despite the incumbent contract having at least two unexpired 1-year options.

24. By letter dated November 29, 2018, ODRS amended its arbitration demand to assert the Solicitation defects still present in the last amendment to the Solicitation.

## V.
## COUNT I:
## Oklahoma is Entitled to Injunctive Relief Based on
## Clear and Prejudicial Violations of the Randolph-Sheppard Act.

25. Oklahoma is entitled to injunctive relief enjoining Defendants from proceeding with the follow-on procurement while the arbitration is pending before the Department of Education.

26. In deciding whether to grant a temporary restraining order and preliminary injunction, the Court considers four factors: (1) Plaintiff's likelihood of success on the merits; (2) whether Plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause harm to others; and (4) the impact of an injunction upon the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Petrella v. Brownback*, 787 F.3d 1242, 1257 (10th Cir. 2015); *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009). No single factor is dispositive.

Trial courts are to balance the four factors and not consider them prerequisites to the issuance of a temporary restraining order or preliminary injunction.

### 1. *Oklahoma is Likely to Succeed on the Merits of the Arbitration*.

27. Oklahoma is likely to prevail on the merits of the arbitration. The violations of the Randolph-Sheppard Act are clear and are proven by a careful reading of the Solicitation and the undisputed actions of the Defendants.

#### a. *Improper termination of ODRS' contract.*

28. First, Defendants' unilateral premature termination of ODRS' food service contract at Ft. Sill was done without the approval of the Secretary of Education.

29. The Act provides that any limitations on the operation of an existing cafeteria by ODRS must be based on a finding that such continued operation would adversely affect the interest of the Unites States. 20 U.S.C. § 107(b)(2). Whether such a limitation is necessary must be reviewed and resolved solely by the Secretary of Education, not the procuring agency which only serves in an advisory role.

30. Here, Defendants did not provide a written justification nor secure a determination by the Secretary of Education prior to its attempt to unilaterally and improperly eliminate the current full food service contract at Fort Sill in violation of the Randolph-Sheppard Act. For this reason, Oklahoma will be successful on the merits.

#### b. *Failure to properly consult with the Secretary of Education as required by the RSA and its implementing regulations.*

31. Second, the Solicitation (as amended) improperly allows Defendants to limit the placement of ODRS and the blind vendor in the follow-on contract at Ft. Sill

without first seeking an approval by the Secretary of Education.

32. The Solicitation properly states that "The Randolph-Sheppard Act (RSA) applies to this requirement." RFP at 98; ¶ I.B(1). However, the Solicitation then states:

   a. All offerors are hereby notified that this solicitation is subject to the R-SA and the priority it affords to blind vendors for operation of military dining facilities. The blind have a priority right to operate dining facilities on federal property. This applies to this solicitation as defined in Army Regulations (AR) 30-22 and 210-25.

   b. The Army applies this priority in accordance with (IAW) AR 210-25. A Competitive Range shall be established after initial evaluation of proposals. If the State Licensing Agency (SLA) is determined to be in the Competitive Range then the SLA will be afforded the priority as delineated in the R-SA and AR 210-25. ***If the SLA is not determined to be in the Competitive Range, then the successful offer within the Competitive Range will be selected IAW Addendum to 52.212-2 Evaluation Factors for Award paragraph I.a.(1) of the Solicitation.***

RFP (confirmed as of Amendment 0009) at 110; ¶ I.B(1)(a)-(b) (emphasis added)(FAR § 52.212-1).

33. This offending language is repeated, in part, later in the Solicitation which promises that the contract award will be made thusly:

   I. Evaluation Factors for Award

   a. Basis for contract award.

   (1) Award will be made to a single offeror whose timely offer is deemed responsible IAW FAR, whose proposal conforms to the solicitation requirements and whose proposal, judged by an overall assessment of the evaluation criteria and other considerations specified in this solicitation, represents the Lowest Priced Technically Acceptable (LPTA) offer.

   (2) The Randolph-Sheppard Act (R-SA) applies to this solicitation, therefore, priority will be given to the State Licensing Agency (SLA) pursuant to the R-SA. The priority established by the R-SA applies to the award of contracts for operation of cafeterias on Federal property. After initial evaluation and based on the ratings of each proposal

> against all evaluation criteria, a Competitive Range shall be established comprised of all of the most highly rated proposals.
>
> (a) If the SLA is determined to be in the Competitive Range, then the SLA will be afforded the priority as delineated in the R-SA and AR 210-25.
>
> (b) ***If the SLA is determined NOT to be in the Competitive Range, then the successful offer within the Competitive Range will be selected IAW Addendum to 52.212-2, paragraph I.a.(1)***.

RFP (confirmed as of Amendment 0009) at 118; ¶ I.a(1)-(2) (emphasis added)(FAR § 52.212-2).

34. Defendants have confirmed that if they determine that ODRS' proposal is outside the initial competitive range, Defendants intend to move forward with the procurement and make contract award to another offeror without first consulting with the Secretary of Education.

35. Under the Act, Congress has granted a priority contract right to the State licensing agencies and their licensed blind managers to operate cafeterias on federal property. *See* 20 U.S.C. §107(b). Congress delegated to the Secretary of Education the authority to grant or withhold this priority contract right. In particular, the Act provides:

> Regulations establishing priority for operation of cafeterias. The Secretary, through the Commissioner, shall prescribe regulations to establish a priority for the operation of cafeterias on federal property by blind licensees when he determines, on an individual basis and after consultation with the head of the appropriate installation, that such operation can be provided at a reasonable cost with food of high quality comparable to that currently provided to employees, whether by contract or otherwise.

20 U.S.C. § 107d-3(e).

36. The Act's implementing regulations repeat this delegation of authority to the Secretary of Education:

> **Section 395.33 Operation of Cafeterias by Blind Vendors.**
>
> (a) ***Priority in the operation of cafeterias by blind vendors*** on federal property ***shall be afforded when the Secretary determines***, on an individual basis, and after consultation with the appropriate property managing department, agency or instrumentality, that such operation can be provided at a reasonable cost, with food of a high quality comparable to that currently provided employees, whether by contract or otherwise.

34 C.F.R. § 395.33(a)(emphasis added).

37. By failing to consult with the Secretary of Education prior to (1) eliminating Oklahoma from the competition, and (2) making award to another non-SLA offeror, the Solicitation is in clear contravention of the mandates of the Act and its regulations. For this reason alone the current procurement should be stopped and Oklahoma allowed to pursue its arbitration rights under the Act.

        *c.*    *The Solicitation's $111M Price Ceiling is arbitrary and inconsistent with the RSA and its implementing regulations.*

38. Third, Defendants' use of an arbitrary price ceiling in the Solicitation improperly limits Oklahoma's proposed pricing and prevents the Army and the Secretary of Education from properly determining whether Oklahoma can operate the Ft. Sill dining facilities at a reasonable cost, with food of a high quality as comparable to the services currently being performed. *See* 34 C.F.R. § 395.33(a). Specifically, on page 122 of the conformed Solicitation Defendants intentionally cap offerors' total proposed pricing to $111 million for the five year performance period. RFP at 122 (confirmed as of

12

Amendment 0009) ("The Program Ceiling for the five (5) year ordering period is $111 million.")

39. ODRS and its blind licensee are currently performing the incumbent contract. When the incumbent pricing is extrapolated for a five year period, the total contract price is well over the $111M price ceiling established by the Solicitation. In addition, the Solicitation requires the performance of additional food service in two more dining facilities (3443 and 2811). These additional dining facilities represent an increase in the amount of full food services provided under the follow-on contract. Under the Solicitation the contractor is now required to provide all supplies. This requirement is not part of the current contract. Thus, the scope of work required under the Solicitation is increased from the incumbent contract.

40. Based upon the forgoing, it is clear that Defendants' price ceiling is neither reasonable nor rational given the current cost associated with the incumbent contract and the increased scope of work contemplated by the Solicitation. As such, the Solicitation is written in a manner which prohibits the Army and the Secretary of Education from properly determining whether Oklahoma can operate the Ft. Sill dining facilities at a reasonable cost, with food of a high quality as comparable to the services currently being performed. *See* 34 C.F.R. § 395.33(a). Instead, the Solicitation arbitrarily caps proposed pricing at $111M so as to force Oklahoma to submit a below-cost offer which does not reflect the entire cost of performance. In so doing, the Solicitation violates 34 C.F.R. § 395.33(a), because priority will not be granted to Oklahoma if it submits a reasonably priced bid greater than $111M.

> d. *The Solicitation's use of meal bands to order full food service at Ft. Sill degrades the RSA rights of Oklahoma.*

41. Fourth, Defendants' arbitrary use of meal bands[1] in the Solicitation to order full food services effectively degrades Oklahoma's priority right under the RSA because it also requires unreasonable pricing.

42. Each meal band contains the range of meals to be served at a given dining facility at Ft. Sill. The meal ranges within each band are arbitrary and unreasonably broad. For dining facility 5965, subCLINs X005AE and X005AF require service of three meals per day to cover a headcount ranging from 7201-10000, an enormous difference of 2,799 meals. The reasonable cost of operating a dining facility with a headcount of 7201 differs enormously from operations accommodating 10,000. The cost difference is related to the increased in staffing, supplies, and other administrative overhead to perform at the highest end of the meal band (10000). Despite this wide range within the meal bands, the contractor is only allowed to invoice Defendants at a fixed price for the entire meal band ordered by Defendants.

43. Here, the meal bands as established by the Solicitation are arbitrary and prevent the Secretary of Education from determining whether Oklahoma can operate the Ft. Sill dining facilities at a reasonable cost, with food of a high quality as comparable to

---

[1] The term "meal bands" is used to describe the range of daily meals that are reflected in each subCLIN. (Pricing Matrix, Attachment G to the Solicitation). Each subCLIN represents the pricing for each dining facility (DFAC) at Ft. Sill. For instance, subCLIN X003AA states a meal band of 1 – 2400, subCLIN X003AB states a meal band of 2401 – 4800, and subCLIN X003AC states a meal band of 4801 – 7800. As the meal bands increase so does the line item pricing associated with the higher meal bands. Each of these subCLIN meal bands represent a range of meals to be prepared on a given day within a certain dining facility. There are multiple dining facilities at Ft. Sill which are the subject of this Solicitation.

the services currently being performed. *See* 34 C.F.R. § 395.33(a). Especially where the meal bands contain significant meal ranges.

44. A further defect associated with the use of meal bands occurs when Defendants order the highest meal band in a particular dining facility but the number of meals served (based upon actual troop headcount) is in a lower meal band. In this situation the contractor is only permitted to invoice Defendants for the lower priced meal bands and not the highest meal band that was ordered and delivered.

45. This ordering and invoicing procedure requires ODRS, and all other offerors, to guess at what level troops will be sent to the dining facilities each day. If ODRS prepares its proposal to perform within the highest portion of each meal band, ODRS will be fairly compensated for the work it must perform to meet Defendants' order. However, ODRS' proposal will be substantially higher than an offeror who proposes to perform at the lower under of each meal band. If ODRS decides to propose to perform at the lower end of the meal band, ODRS bears the risk of losing hundreds of thousands of dollars when more troops show up per meal than it has guessed.

46. It is unreasonable that inadequate staffing or supplies should interfere with troop feeding, and it is unreasonable for ODRS to perform the contract without being paid for the number of troops it is directed to feed by Defendants. Private sector offerors may price their offers at the low end of the meal bands and are even allowed to submit a below reasonable cost offer. ODRS, as an Oklahoma state agency, cannot make such a below cost offer and still meet the RSA mandate of providing remunerative employment to its blind manager as required by § 107(a) of the Act.

47. Accordingly, the arbitrary use of the meal bands does not permit Oklahoma to compete on a level field and results in a defective competitive range determination. Stated differently, when Defendants make their competitive range determination as required under 34 C.F.R. § 395.33(b), a reasonable proposal by ODRS will be so significantly disadvantaged that the Act's priority is substantively negated. It is a clear violation of the RSA for ODRS to lose the Randolph-Sheppard priority to an unreasonably low priced offeror whose pricing is skewed downwardly because of Defendants' use of meal band pricing in conjunction with an equally arbitrary price ceiling.

48. Moreover, the use of meal bands prohibits the Army and the Secretary of Education from properly determining whether Oklahoma can operate the Ft. Sill dining facilities at a reasonable cost, with food of a high quality as comparable to the services currently being performed. *See* 34 C.F.R. § 395.33(a). As a result, this procurement cannot proceed given the current Solicitation language.

### 2. *Oklahoma and its Blind Vendor will Suffer Irreparable Harm if the Injunction is not Issued.*

49. Oklahoma will be irreparably harmed should Defendants proceed with this faulty procurement before Oklahoma has an opportunity to pursue its arbitration rights under the RSA. The full food service contract at Ft. Sill represents a significant source of revenue for Oklahoma and its blind vendor. Here, Oklahoma's blind vendor has no other significant source of revenue and thus the Ft. Sill full food service contract represents a

significant portion of his income that would be lost should Defendants continue with the follow-on procurement.

50. Additionally, Oklahoma will suffer irreparable harm that cannot be compensated in money damages should Defendants proceed with this procurement before the DOE arbitration proceeding is concluded. Should the procurement proceed, ODRS will lose its status as the incumbent contractor and will also lose a substantial number of team members from its team of workers currently performing under the incumbent contract. Loss of incumbent status constitutes irreparable harm.

51. ODRS will also suffer irreparable harm by being denied the contract priority right that Congress established for it under the RSA. The denial of this right cannot be fully compensated by money damages. Furthermore, public policy favors economic stability and opportunities for the blind, matters not otherwise compensable by monetary damages.

52. In addition, sovereign immunity bars an award to Oklahoma for monetary damages for a violation of the RSA. Therefore, Oklahoma has no recourse if it is not able to enjoin Defendants from proceeding with this procurement pending the outcome of the arbitration.

### 3. *Granting the injunction will not cause harm to others.*

53. There will not be substantial harm to Defendants or others during the time a temporary restraining order and preliminary injunction is in effect. ODRS can and will continue to provide all required full food services at Ft. Sill until such time as the DOE arbitration concludes and will do so under the terms of the incumbent contract.

54. This does not prejudice Defendants or require that Defendants violate other procurement laws since the Act expressly permits Defendants to enter into direct negotiations with ODRS for continued services, if necessary. *See* 34 C.F.R. § 395.33(d). Additionally, Defendants should exercise the remaining two 1-year options under the incumbent contract which would extend performance through March 31, 2021.

### 4. *Impact of an injunction upon the public interest.*

55. The impact on the public's interest is adverse only if a preliminary injunction is not issued. During the time an injunction is in place, the immediate "public", that is, Defendants, will continue to receive the same full food services from Oklahoma that it currently receives. Benefits to the wider public would continue to be served during the time an injunction is in effect, as the purposes of the Randolph-Sheppard Act to provide gainful employment for qualified blind vendors would continue to be fulfilled.

56. Furthermore, the public interest is met by allowing Oklahoma the time necessary to resolve its dispute with Defendants through the arbitration procedure mandated by Congress under the RSA. Here, the only effect of granting a temporary restraining order and preliminary injunction will be to preserve the status quo pending the outcome of the arbitration with Defendants. Thus, all the equities and other relevant factors weigh heavily in favor of granting the requested injunction. Oklahoma has everything to lose if this relief is not granted, but Defendants will lose nothing if an injunction is granted.

57. For the foregoing reasons, Oklahoma respectively submits that no bond or security is necessary for a Temporary Restraining Order and Preliminary Injunction to issue and requests that such requirement under Fed. R. Civ. Proc. 65(c) be waived.

# VI.
# PRAYER

Oklahoma prays that an expedited hearing be held on this request for a temporary restraining order and preliminary injunction and that this Court issue an injunction which:

1. enjoins Defendants, its agencies and departments, from continuing with the ongoing procurement activity identified in Solicitation No. W9124J-18-R-0024, including the receipt of proposals, evaluation of any proposals submitted in response to Solicitation No. W9124J-18-R-0024, or making any contract award in connection with the Solicitation until such time as the DOE arbitration proceeding required by the Act is concluded; and

2. Oklahoma also requests such relief as this Court deems just and appropriate.

Dated: December 11, 2018

                                  Respectfully Submitted,

                                  */s/ Peter A. Nolan*
                                  Peter A. Nolan
                                  Texas Bar No. 15062600
                                  Winstead PC
                                  401 Congress Avenue, Suite 2100
                                  Austin, TX 78701
                                  (512) 370-2800 F: (512) 370-2850
                                  pnolan@winstead.com

                                  and

*/s/ Richard Olderbak*
Richard Olderbak
Oklahoma Bar No. 17686
Oklahoma Department of Rehabilitation Services
Assistant Attorney General
3535 N.W. 58th Street, Suite 500
Oklahoma City, OK 73112-4824
(405) 951-3598 F: (405) 951-3529
ROlderbak@okdrs.gov

**ATTORNEYS FOR PLAINTIFF, THE STATE OF OKLAHOMA, by and through THE OKLAHOMA DEPARTMENT OF REHABILITATION SERVICES**